UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CATHERINE LYNNE
MCEACHERN,

     Plaintiff,

v.                                                        Case No.:  2:23-cv-877-JLB-KCD

JOHN NELSON MCEACHERN
and UNITED STATES OF
AMERICA,

     Defendants.

_____/

## ORDER

Before the Court is Plaintiff Catherine Lynne McEachern's Objection to
Notice of Removal and Motion to Remand to State Court. (Doc. 9.)[1] The United
States responded in opposition and filed a supplemental brief at the Court's
request. (Doc. 13, Doc. 16.) For the reasons below, McEachern's motion is
granted.

### I. Background

McEachern owns property in Estero, Florida. Sometime in 2023, the
Internal Revenue Service put a lien on the property for unpaid taxes. The lien

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have
been omitted in this and later citations.

did not name McEachern. It instead identified her husband as the debtor. (*See*
Doc. 3 ¶¶ 2, 7.)

Because McEachern's husband reportedly has no interest in the
property, she filed a quiet title action in state court to challenge the tax lien.
(*See* Doc. 3.) She named her husband (John McEachern) and the United States
as defendants. Although the United States typically enjoys sovereign
immunity from suit in state court, Congress has made an exception for these
circumstances. *See* 28 U.S.C. § 2410; *Stoecklin v. United States*, 943 F.2d 42,
43 (11th Cir. 1991) ("[A] taxpayer may challenge the procedural validity of a
federal tax lien under § 2410.").

To serve the United States, McEachern personally served the United
States Attorney's Office for the Middle District of Florida.  She also sent a copy
of the complaint via certified mail to the Attorney General. (*See* Doc. 9 ¶¶ 7-8.)
For reasons discussed below, the Attorney General rejected McEachern's
service packet and returned it to her. McEachern filed proof of the certified
mailing, indicating delivery to "Front Desk/Reception/Mail Room," but took no
further action. (Doc. 13 at 3.)

McEachern's quiet title action continued for several months in state
court without a response from the United States. Eventually, "the United
States Department of Justice, Tax Division, received a copy of the complaint
from the [United States Attorney's Office] with a request that the Tax Division

defend the interests of the United States." (Doc. 13 at 2.) The United States then appeared and removed the case to federal court. (*See* Doc. 1.)

McEachern now moves to remand her claims back to state court. (Doc. 9.) Her motion focuses on timing. [2] According to McEachern, the United States removed this case well after the 30-day window allowed under 28 U.S.C. § 1446(b). (*Id.* ¶ 6.) Thus, the United States "is now time-barred from removing the State Court Action to federal jurisdiction." (*Id.* ¶ 9.)

The United States sees it differently. In its view, McEachern never perfected service by mailing her complaint to the Attorney General. And since "[f]ormal service triggers the timeline under § 1446(b)," the "30-day [deadline] has not begun to run." (Doc. 13 at 5-6.) In other words, the United States could remove this case because service was (and remains) incomplete.

## II. Discussion

As mentioned, the United States has waived its sovereign immunity and can be sued in limited cases under 28 U.S.C. § 2410, including suits to quiet title. Claims brought under § 2410 can proceed in state or federal court. But for "the protection of the United States," it has reserved the right to choose the

---

[2] McEachern also claims that her suit for quiet title is not subject to federal jurisdiction. (Doc. 9 ¶¶ 4-5.) This argument is "wholly without merit" and need not be addressed further. *Murrell v. Two Recs. Filed in Seminole Cnty.*, No. 6:01-CV-986-ORL19KRS, 2001 WL 1572273, at *2 (M.D. Fla. Oct. 15, 2001); *see also Saccullo v. United States of Am.*, 913 F.3d 1010, 1013 n.1 (11th Cir. 2019) ("Federal question jurisdiction arises under 28 U.S.C. § 2410, which provides that district courts may hear quiet-title actions concerning property on which the United States has a lien.").

federal forum. 28 U.S.C. § 2410(a). "Any action brought under [§] 2410 of this title against the United States in any State court may be removed . . . to the [encompassing] district court." *Id.* § 1444; *see also Hussain v. Bos. Old Colony Ins. Co.*, 311 F.3d 623, 629 (5th Cir. 2002) ("As a trade off for the waiver of sovereign immunity, [28 U.S.C. § 1444] permits the government to remove to federal court any such case initiated in state court.").

The United States' right to remove a § 2410 claim is subject to the same procedural constraints as any other suit. *See Zeigler v. Beers*, 412 F. Supp. 2d 746, 749-50 (N.D. Ohio 2005). Pertinent here, there is a thirty-day window for removal that opens upon service. 28 U.S.C. § 1446(b); (Doc. 13 at 5 (conceding the "United States has 30 days from service of process in which to remove").)[3] "Essentially, the thirty-day removal period is triggered by formal service of process or waiver of service of process." *Brown v. U.S. Dep't of Heath & Hum. Servs.*, No. 5:10-CV-94-D, 2010 WL 2927699, at *2 (E.D.N.C. July 22, 2010). The thirty-day deadline is waivable, but without a waiver, it is strictly

---

[3] The United States may enjoy an unqualified right to removal. That is because 28 U.S.C. § 1444, which specifically provides for removal of § 2410 claims, contains no time limit. *Cf. Smith v. Harbison*, 446 F. Supp. 3d 1331, 1335 (M.D. Ga. 2020). But this argument has not been raised. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."). And even if the breadth of § 1444 were before the Court, the United States removed this case under the general removal statute and not § 1444. *See* Doc. 1 ¶ 8; *see also Bracknell v. Int'l Paper Co.*, No. CV 2:21-00448-KD-N, 2022 WL 1548123, at *7 (S.D. Ala. Apr. 18, 2022) ("The Notice of Removal cannot be amended to add a separate basis for removal jurisdiction after the thirty day period.").

enforced. *See Bankston v. Illinois Nat. Ins. Co.*, 443 F. Supp. 2d 1380, 1381 (M.D. Fla. 2006); *Liebig v. DeJoy*, 814 F. Supp. 1074, 1076 (M.D. Fla. 1993).

Turning back to the facts here, there is no dispute that the removal stands untimely if McEachern succeeded with her service efforts. As mentioned, the United States did not appear and seek removal until several months after the complaint was mailed to the Attorney General and delivered to the U.S. Attorney's office. But if service was never completed (or deficient), the United States was free to seek removal even with its belated appearance. *See Pine Tree Homes, Inc. v. Stoddard*, No. 3:09-CV-915, 2009 WL 3769897, at *2 (M.D. Pa. Nov. 10, 2009) ("Service was never properly effected against the government . . . [and thus] the government's clock for removal could not be triggered, and the removal notice was timely filed."). So this dispute hinges on whether service was correctly provided to the United States.

Assessing the service question first presents a choice-of-law problem. A federal court "consider[ing] the sufficiency of process after removal . . . does so by looking to the state law governing process." *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1286 n.1 (11th Cir. 1985). This stems from "the general and unassailable proposition . . . that States may establish the rules of procedure governing litigation in their own courts." *Felder v. Casey*, 487 U.S. 131, 138 (1988). This rule holds true even when the federal government is the removing party. "Service upon [a] federal defendant [is]

deemed proper so long as it accorded with state law." *Racquet Club Apartments at Bonaventure 4 S. Condo. Ass'n v. U.S. Sec'y of Hous. & Urb. Dev.*, No. 12-60459-CIV, 2012 WL 3244656, at *4 (S.D. Fla. Aug. 9, 2012); *see also Lake Chase Condo. Ass'n, Inc. v. Sec'y of Hous. & Urb. Dev.*, No. 8:12-CV-177-T-23TBM, 2013 WL 3772487, at *2 (M.D. Fla. July 16, 2013).

But there is a wrinkle here. Congress has spoken to how the United States must be served for claims arising under § 2410. *See* 28 U.S.C. § 2410(b) ("[S]ervice upon the United States shall be made by serving the process of the court with a copy of the complaint upon the United States attorney for the district in which the action is brought . . . and by sending copies of the process and complaint, by registered mail, or by certified mail, to the Attorney General[.]"). And these service requirements apply no matter if the case starts in state or federal court. *Id.* While federalism normally dictates using state law to assess service after removal, that calculus changes where, as here, Congress has directed an alternative procedure. *Cf. Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) ("By virtue of the Supremacy Clause, the [Hague Service] Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies."). The Supremacy Clause requires that the Court (and the parties) follow what is mandated in § 2410(b). *See United States v. Aultman*, No. CIV.A. 04-1153, 2006 WL 544401,

at *3 (W.D. Pa. Mar. 6, 2006) ("[N]othing short of statutory notice according to § 2410 will suffice.").

The United States disagrees with this conclusion. It suggests that "§ 2410 does not require . . . that service be effectuated in the manner [it] describe[s]." (Doc. 16 at 2.) Rather, state law remains an alternative avenue for McEachern to perfect service. (*Id*.) The United States' argument stems from *United States v. Brosnan*, 363 U.S. 237 (1960).

In *Brosnan*, the Supreme Court considered whether federal liens were effectively extinguished by state proceedings where the United States was not a party. *Id*. at 239. The government argued, among other things, that 28 U.S.C. § 2410 evidenced a congressional intent to have uniform federal rules govern federal liens. Thus, § 2410 proscribed the mandatory conditions for commencing a suit to foreclose a lien on property in which there is also a federal interest. *Id*. at 242. This argument fell short, with the Court observing that § 2410 was merely permissive and did not require that the government be named a party or receive notice. In other words, while § 2410 allowed a claimant to bring the United States into a foreclosure proceeding, the statute was not the exclusive remedy where the government held a lien.

The Court also noted that § 2410 "on [its] face evidence[d] no intent to exclude otherwise available state procedures." *Id*. at 246. Recognizing that the use of liens enmeshed federal law "into an area of complex property

relationships long since settled and regulated by state law," the Court ultimately adopted state law as the rule of decision for "divestiture of federal tax liens." *Id.* at 241-42. Put simply, state law controls how a federal tax lien is treated in a creditor dispute under § 2410.

Contrary to the United States' claim, *Bronsan* does not command that state law displace the procedural requirements in § 2410. Rather, *Bronsan* recognized that state law "is only applicable in determining the extent of property and rights to property to which a federal tax lien attaches." *United States v. Mucherino*, No. 3:06 CV 751 (JBA), 2008 WL 11497845, at *3 (D. Conn. Sept. 4, 2008); s*ee also First Am. Title Ins. Co. v. United States*, 848 F.2d 969, 972 (9th Cir. 1988) (explaining that, under *Bresnan*, "courts look to state law to determine the extent of an individual's property interest in cases involving the federal tax liens").

But even reading *Brosnan* broadly, we arrive in the same place. In opting to endorse state law, the *Brosnan* court emphasized that its conclusion "would not, of course, withstand a congressional direction to the contrary." *Id.* The opinion made clear that state law controls *"except to the extent that Congress may have entered the field."* *Brosnan*, 363 U.S. at 241 (emphasis added). Congress has entered the field on the issue of service, mandating how the United States must receive notice under § 2410 if it will be a party. Thus, as many courts have recognized, § 2410(b) "directs the appropriate fashion to

8

effectuate service upon the United States." *United States v. Dansby*, 509 F. Supp. 188, 197 (N.D. Ohio 1981); *see also Pine Tree Homes, Inc.*, 2009 WL 3769897, at *2; *Feck v. Mari-Jata*, No. 1:08-CV-720, 2009 WL 928293, at *3 (S.D. Ohio Mar. 16, 2009); *In re 3660 La Hacienda Drive, San Bernardino, Cal. 92404*, No. EDCV1700066VAPDTBX, 2017 WL 2190056, at *2 (C.D. Cal. May 17, 2017); *Conn v. United States*, 823 F. Supp. 2d 441, 444 (S.D. Miss. 2011).

Having found that § 2410(b) applies here, it has two requirements. First, the claimant must serve "the process of the court with a copy of the complaint upon the United States attorney [or his designee] for the district in which the action is brought." 28 U.S.C. § 2410(b). Second, a copy of the process and complaint must be sent "by registered mail, or by certified mail, to the Attorney General of the United States at Washington, District of Columbia." *Id.* "Service upon the United States is not complete until the plaintiff complies with the requirements relevant to both the United States attorney and the Attorney General." *Conn v. United States*, 823 F. Supp. 2d at 444 (analyzing identical service language in Fed. R. Civ. P. 4(i)).

The United States concedes that the U.S. Attorney was properly served. But the Attorney General is a different story. According to the United States, McEachern wrongly addressed the service packet to the Attorney General, which "negates her attempt at service." (Doc. 16 at 4.) Here is what McEachern put on the mailing label:

> United States of America, Acting on Behalf of the
> Department of Treasury, Internal Revenue Service
> c/o Attorney General of the United States
> 950 Pennsylvania Avenue NW
> Washington, DC 20530-0001

(Doc. 15-2.)

McEachern got the right address. She also identified the Attorney General as the recipient. The problem lies, according to the United States, with the extra information on the label. By referencing the Internal Revenue Service, the "Department of Justice's mail personnel reasonably determined [the] service packet . . . was a case of right person, wrong address." (Doc. 16 at 6.) "Put simply, by attempting service on the nonparty IRS, in care of the Attorney General, she served neither the agency nor the Attorney General." (*Id.* at 4.)

For starters, the Court rejects any contention that McEachern was "attempting service on the nonparty IRS." (Doc. 16 at 4.) The mailing label is addressed to the United States, not the IRS. It was also sent to the Attorney General's office, not the IRS. So this is not a case of "right person, wrong address" as the United States' claims. It's a case of right address, right person, but extraneous information.

The Court is ultimately satisfied that McEachern complied with § 2410(b). Turning back to the text, the statute says: "service upon the United States shall be made by . . . sending copies of the process and complaint, by

registered mail, or by certified mail, to the Attorney General of the United States at Washington, District of Columbia." There is no requirement that the mailing label contain anything beyond directing the package to the Attorney General at his office. And that is what McEachern did here by including "c/o Attorney General of the United States."

Black's Law Dictionary defines c/o as an abbreviation for "Care of." c/o., Black's Law Dictionary (110th ed. 2014). The "care of" label designates the intended recipient of a mailing even though its contents may pertain to another. "The designation 'c/o' or 'care of' simply means that one party accepts or receives something for another party." *Keystone Mfg., LLC v. Accuro Med. Prod., LLC*, No. 1:12-CV-1186, 2013 WL 2318885, at *2 (W.D. Mich. May 28, 2013). That is exactly the Attorney General's role here. "The IRS . . . has no capacity to be sued. The proper party . . . is the United States." *Labry v. I.R.S.*, 940 F. Supp. 148, 149 (E.D. La. 1996). The Attorney General, in turn, "is the chief legal officer of the United States" and "vested with plenary power over all litigation to which the United States or one of its agencies is a party." *Marshall v. Gibson's Prod., Inc. of Plano*, 584 F.2d 668, 676 n.11 (5th Cir. 1978). Thus, directing service "care of" the Attorney General, as McEachern did, makes sense.

The United States cites several cases that allegedly prove McEachern "failed to serve the Attorney General." (Doc. 16 at 4-6.) But in each case the

service package was sent to the wrong address, *Smith v. United States*, No. 5:21-CV-00237-TES, 2022 WL 1432541, at *2 (M.D. Ga. May 5, 2022), didn't identify the Attorney General, or was directed to a fictitious position, *Van Manen v. United States*, 838 F. Supp. 335, 337 (W.D. Mich. 1993). Those are not the facts here. McEachern sent her complaint to the right address and identified the Attorney General as the intended recipient. Notably absent from the United States' brief, meanwhile, are the cases where a court has allowed service "care of" the Attorney General. *See, e.g.*, *Winnemucca Indian Colony v. U.S. ex rel. Dep't of the Interior*, No. 3:11-CV-00622-RCJ, 2012 WL 78198, at *9 (D. Nev. Jan. 10, 2012); *cf. Cienciva v. Brozowski*, No. 3:20-CV-2045, 2022 WL 2791752, at *2 (M.D. Pa. July 15, 2022).

The United States charges that it should not be encumbered "to resolve ambiguity as to the intended recipient of [McEachern's] service packet, be it the Department of the Treasury, the IRS, or the Attorney General." (Doc. 16 at 6.) But the Court sees no ambiguity that required interpretation. McEachern identified the Attorney General as the designated recipient by marking the package "c/o" his office. *See, e.g.*, *Lewis v. Hiday & Ricke, P.A.*, No. 18-CIV-62336-RAR, 2019 WL 4731936, at *2 (S.D. Fla. July 31, 2019). Boiled down, the United States seeks to elevate form over substance. Taking its view would allow the Attorney General to reject any service package directed to him that

contained extraneous information no matter how innocuous or inconsequential. Nothing in § 2410(b) allows such a result.

One last issue to tidy up. The United State claims that McEachern had a "duty" to "take additional efforts" after the Attorney General rejected her service package. (Doc. 16 at 8.) And her failure to do anything "negates service." (*Id.* at 7.) Not so. The duty identified by the United States only triggers where there is a deficiency in service. *See McGinnis v. Shalala*, 2 F.3d 548, 551 (5th Cir. 1993); *Craft v. Saul*, No. 4:19-CV-00078-CWD, 2020 WL 534522, at *2 (D. Idaho Feb. 3, 2020). As discussed above, there was no deficiency here. McEachern did what § 2410(b) required—she mailed a copy of the summons and complaint to the Attorney General at his office. At that point, her duty ended. *Cf. Winnemucca Indian Colony*, 2012 WL 78198, at *9 (explaining that Fed. R. Civ. P. 4(i), which mirrors § 2410(b), "only requires send[ing] the documents").

### III. Conclusion

Since McEachern perfected service under § 2410(b) several months before the United States appeared and removed the case, its notice of removal stands untimely. Remand is thus required. *See Groesbeck Invs., Inc. v. Smith*, 224 F. Supp. 2d 1144, 1152 (E.D. Mich. 2002) (remanding quiet title action where "the Government's removal . . . was not timely").

Accordingly, it is now **ORDERED**:[4]

1.    McEachern's Objection to Notice of Removal and Motion to Remand to State Court (Doc. 9) is **GRANTED**.

2.    If no objections are filed within 14 days of this order, which is the time allotted under Fed. R. Civ. P. 72, the Clerk is directed to remand this case to state court by transmitting a certified copy of this Order to the clerk of court for the Twentieth Judicial Circuit in and for Lee County, Florida. Following remand, the Clerk is directed to deny any pending motions, terminate all deadlines, and close the case.

3.    If objections are timely filed, the Clerk is directed to hold disposition until ordered by the District Judge.

**ENTERED** in Fort Myers, Florida on December 5, 2023.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

---

[4] Because a motion to remand does not address the merits of the case but merely changes the forum, the Court finds it is a non-dispositive matter that is appropriately handled by order. *See Franklin v. City of Homewood*, No. CIV.A. 07-TMP-006-S, 2007 WL 1804411, at *3 (N.D. Ala. June 21, 2007).